# United States Court of Appeals
## For the First Circuit

No. 03-2225

ARMANDO E. VARGAS-RUIZ,

Plaintiff, Appellant,

v.

GOLDEN ARCH DEVELOPMENT, INC.,
(MCDONALD'S SYSTEM DE PUERTO RICO, INC.),
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Selya, Circuit Judge,
Gibson,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Jaime-Albizu Lamboy-Riley, with whom Díaz, Lamboy & Asociados
was on brief, for appellant.
Myriam Y. Fernández-González, with whom Carlos A. García Pérez
and Goldman, Antonetti & Cordova, PSC were on brief, for appellee.

May 10, 2004

---

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

**SELYA**, **Circuit Judge**.  In this diversity case, a customer who sustained injuries when he ordered his milk cold but received it hot, brought a civil action against the restauranteur for negligence under Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.  In due course, the defendant moved to dismiss on the ground that the plaintiff had sued too late.  The district court converted the motion to one for summary judgment, see Fed. R. Civ. P. 12(b), wrote a thoughtful rescript explaining why the limitations period had expired, and granted judgment accordingly.  Vargas-Ruiz v. Golden Arch Dev., Inc., 283 F. Supp. 2d 450 (D.P.R. 2003).  The plaintiff now appeals.

We often have stated, and today reaffirm, that when a trial court accurately sizes up a case, applies the law faultlessly to the discerned facts, decides the matter, and articulates a convincing rationale for the decision, there is no need for a reviewing court to wax longiloquent.  See, e.g., Cruz-Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 383 (1st Cir. 2000); Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 220 (1st Cir. 1996); Ayala v. Union de Tronquistas, Local 901, 74 F.3d 344, 345 (1st Cir. 1996); Holders Capital Corp. v. Cal. Union Ins. Co. (In re San Juan Dupont Plaza Hotel Fire Litig.), 989 F.2d 36, 38 (1st Cir. 1993).  This case fits neatly within that integument.  We therefore affirm the judgment below for substantially the reasons set forth in the district court's finely honed opinion.

There is one aspect of the case, however, that requires additional comment. In this venue, the plaintiff presses an argument not squarely presented below (and, hence, not addressed by the district court). In order to put this nascent point in context, we briefly rehearse both the legal landscape and the district court's opinion.

The parties agree that Puerto Rico law governs in this diversity tort action. See, e.g., Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 689 (1st Cir. 1994); Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir. 1993). Consequently, the plaintiff's claim is subject to a one-year limitations period. See 31 P.R. Laws Ann. § 5298(2). Because the "hot milk" incident occurred on February 13, 2001, the limitations period began to run on that date. Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997). The plaintiff did not commence his action until March 27, 2002. Thus, as the district court explained, "unless the prescription of the cause of action was interrupted, the present tort action is time-barred." Vargas-Ruiz, 283 F. Supp. 2d at 456.

Under Puerto Rico law, interruption of the one-year limitations period in a personal injury case can occur, inter alia, "by extrajudicial claim of the creditor [or] by any act of acknowledgment of the debt by the debtor." 31 P.R. Laws Ann. § 5303. Once such an interruption occurs, it restarts the limitations clock as of the date of the extrajudicial claim or

acknowledgment of debt.  Tokyo Marine & Fire Ins. Co. v. Perez &
Cia. de P.R., Inc., 142 F.3d 1, 4 (1st Cir. 1998).

The plaintiff asserted below that a claim letter sent to
the defendant's adjuster occasioned such an interruption.  Although
he did not proffer the letter itself, the district court noted that
the adjuster had responded on March 6 and therefore concluded that
the plaintiff had sent such a missive on or before that date.
Vargas-Ruiz, 283 F. Supp. 2d at 456.  Assuming this to be an
extrajudicial claim capable of tolling the limitations period, a
new one-year period began to run at that time.  See id.  That did
not cure the temporal problem, however, because this new period
would have expired no later than March 7, 2002 — yet the plaintiff
did not commence his action until nearly three weeks after that
date.

In the district court, the plaintiff attempted to skirt
the temporal hazard by contending that the adjuster's  turn-down
letter (dated January 11, 2002) constituted an acknowledgment of
debt and that this fresh interruption marked the beginning of yet
another one-year prescriptive period.  The trial court rejected
that contention, id. at 457, and the plaintiff makes only a half-
hearted effort to convince us that the court erred in so ruling.
We do not discuss that contention, but, rather, endorse the
district court's rejection of it.

-4-

On appeal, the plaintiff recasts his argument and insists that he did not have access to the adjuster's file; that if such access had been afforded, he might have discovered more weighty evidence of a fresh interruption; and that, therefore, the lower court erred in rushing to an adverse judgment.

Because this argument was not squarely presented below, the plaintiff has forfeited the right to urge it here. Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987). We analyze it, however, to ensure that no plain error exists. We discern none.

Where, as in this case, a party professes an inability to respond to a summary judgment motion because of incomplete discovery, his recourse is by way of Fed. R. Civ. P. 56(f).[1] That rule "describes a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an

---

[1]The rule reads:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994).

Here, however, the plaintiff did not invoke Rule 56(f) before the district court.[2] By the same token, he filed no motion to defer the decision, prepared no affidavit delineating either the etiology or the dimensions of his inability to proceed, and offered the district court no coherent explanation of why he needed extra time or what fruits he anticipated that extra time might yield.

While we do not insist on slavish compliance with the imperatives of Rule 56(f) in order to obtain its benefits, see Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988); Taylor v. Gallagher, 737 F.2d 134, 137

---

[2]At oral argument in this court, the plaintiff attempted to explain his failure by insinuating that he was taken unawares when the district court converted the defendant's motion to dismiss to a motion for summary judgment. See Fed. R. Civ. P. 12(b) (providing that if, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). We find that suggestion disingenuous. After all, it was the plaintiff who, in opposing the defendant's dispositive motion, made a documentary proffer, consisting, inter alia, of the turn-down letter and other miscellaneous correspondence between the plaintiff's lawyer and the adjuster. In taking that tack, the plaintiff invited the conversion — and he cannot credibly claim to have been surprised when the court accepted his invitation. Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999); Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998).

(1st Cir. 1984), we do insist upon substantial compliance. As we explained in Paterson-Leitch:

> [A party] departs from the plain language of [Rule 56(f)] at his peril. When a departure occurs, the alternative proffer must simulate the rule in important ways. It should be made in written form and in a timely manner . . . . The statement must be made, if not by affidavit, then in some authoritative manner — say, by the party under penalty of perjury or by written representations of counsel subject to the strictures of Fed. R. Civ. P. 11 — and filed with the court. Then, too, it should articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet come in from the cold. There must also be shown some realistic prospect that the facts can be obtained within a reasonable (additional) time, and will, if obtained, suffice to engender an issue both genuine and material. Last, the litigant must demonstrate good cause for failure to have conducted the discovery earlier.

840 F.2d at 988.

The plaintiff argues, in effect, that he substantially complied with the requirements of Rule 56(f). That argument rings hollow. He mentioned the absence of the adjuster's file to the district court only in the most oblique terms and his proffers failed in several important ways to simulate what Rule 56(f) requires. We first describe those references and then describe their shortcomings.

The defendant's dispositive motion was filed on December 30, 2002. In an opposition to it, filed on March 18, 2003, the plaintiff stated that he had written "a letter requesting the

[adjuster's] file" and had made follow-up telephone calls "without any results." If obtained, he predicted that the file would show "that plaintiff made a timely claim to defendant." To be sure, the plaintiff at one point suggested that, in his view, "the instant case should not be dismissed until [the adjuster's] file . . . is produced." But he then undercut this observation by asking the court to deny the motion outright instead of delaying its adjudication. In all events, the reference quoted above was buried in the body of a memorandum, devoted mostly to other matters. Its peripheral nature is emphasized by the fact that the defendant's rebuttal memorandum, filed on April 25, 2003, did not even mention the adjuster's file.

On May 1, 2003, the plaintiff served a sur-reply. In a footnote, he mentioned that, on the same date, he had made a request for production of the adjuster's file. Once again, however, he did not ask the court to delay adjudication of the dispositive motion. To the contrary, he continued to press for its denial.

The plaintiff's proffers to the district court bear no real resemblance to what Rule 56(f) requires. To begin, the plaintiff's first allusion to the adjuster's file was not made promptly upon service of the defendant's dispositive motion, but, rather, almost three months later. A party seeking relief under

Rule 56(f) must act celeritously to inform the trial court of his predicament.  See N. Bridge Assocs., 22 F.3d at 1203-05.

For another thing, a petitioning party must offer the trial court more than optimistic surmise.  He must give the court reason to believe that undiscovered facts exist and that those facts, if obtained, would help defeat the pending motion.  See id. at 1203, 1206-08.  The plaintiff did neither of these things.  In his opposition to the dispositive motion, he indicated only that the adjuster's file contained evidence that he had "made a timely claim to defendant."  Fairly read, this allusion seems to emphasize the initial claim letter; and the plaintiff's proffers, taken as a whole, contained nothing sufficient to inculcate a plausible belief that the adjuster's file held something, apart from the claim letter, that might serve to restart the limitations clock.  As to the claim letter itself, the district court gave the appellant its full benefit and, thus, the formality of producing the physical letter could not conceivably have affected the resolution of the matter.

Last — but far from least — a party seeking to postpone the adjudication of a summary judgment motion on the ground of incomplete discovery must explain why, in the exercise of due diligence, he has been unable to obtain the necessary information.  See N. Bridge Assocs., 22 F.3d at 1203, 1205-06.  The plaintiff shirked this obligation with respect to the adjuster's file.  The

timeliness issue had been in the case since the defendant first answered the complaint, asserting a statute of limitations defense. The action had been pending for nine months when the defendant made its dispositive motion and for over fifteen months when the lower court ruled on that motion. The plaintiff had available to him a full complement of discovery devices. Yet he apparently chose not to use these devices in a timely fashion and he made no effort to enlighten the district court as to why he had not undertaken the necessary discovery with reasonable dispatch. This lassitude is fatal to his argument on appeal. See Herbert v. Wicklund, 744 F.2d 218, 222 (1st Cir. 1984) ("Although a district court should generally apply Rule 56(f) liberally, the court need not employ the rule to spare litigants from their own lack of diligence.").

To sum up, when the defendant sought brevis disposition, the plaintiff flouted both the letter and the spirit of Rule 56(f). To make a bad situation worse, he asked the district court to rule then and there on the dispositive motion. The court followed his urging and decided the pending motion on the record before it. The plaintiff's disappointment with that ruling is understandable, but there is no principled way that we can turn back the clock and give him a further opportunity to reconfigure the record.

We need go no further. Having scoured the briefs, entertained oral argument, and carefully canvassed the record, we, like the district court, find no significantly probative evidence

sufficient to create a genuine dispute as to any material fact. The defendant was, as the district court ruled, entitled to judgment as a matter of law.

**<u>Affirmed</u>**.