# United States Court of Appeals
## For the First Circuit

No. 98-1808

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL COLLAZO-APONTE,

Defendant, Appellant.

ON REMAND FROM THE UNITED STATES SUPREME COURT
APPEAL FROM A FINAL JUDGMENT OF CONVICTION
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Circuit Judge,
Wallace,[*] Senior Circuit Judge,
and O'Toole, Jr.,[**] District Judge.

Rafael Collazo-Aponte, pro se.
Lena Watkins, Trial Attorney, Criminal Division, U.S. Department
of Justice, was on brief for appellee.

February 28, 2002

---

[*] Of the Ninth Circuit, sitting by designation.

[**] Of the District of Massachusetts, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.** On June 27, 2000, this Court affirmed the conviction and sentence of appellant Rafael Collazo-Aponte ("Collazo-Aponte") for a drug-related gun offense and for his participation in a drug conspiracy. Collazo-Aponte appealed our decision to the Supreme Court of the United States. The Supreme Court granted appellant's petition for a writ of certiorari, vacated this Court's judgment, and remanded the case to this Court for further consideration in light of <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000). Upon reconsideration, we affirm appellant's convictions but vacate his sentence in part and remand for re-sentencing consistent with this opinion.

<u>BACKGROUND</u>

**A. Facts Elicited at Trial**

In the mid-1980s, a drug-dealing conspiracy was formed in the Virgilio Dávila public housing project in Bayamón, Puerto Rico. The conspirators processed and packaged cocaine and heroin for delivery to various drug distribution points throughout Puerto Rico. In February 1993, the drug organization splintered into rival factions when the Rosario-Rodríguez brothers murdered a fellow conspirator, Richard Muñoz-Candelaria. A series of retaliatory murders ensued as members of the organization engaged in hunting expeditions to kill the Rosario-Rodríguez brothers.

Collazo-Aponte joined the conspiracy shortly after the "war" commenced, when the organization began storing drugs at a co-conspirator's bar where appellant worked. At trial, two cooperating witnesses testified that on numerous occasions they delivered money to Collazo-Aponte in exchange for drugs. When appellant was finally arrested, he was carrying more than 1,000 "decks" of heroin, worth $10,000.

On June 26, 1997, a federal grand jury indicted Collazo-Aponte on charges of using and carrying a firearm during and in relation to a drug conspiracy in violation of 18 U.S.C. § 924(c)(1)(A), and of conspiracy to possess with intent to distribute cocaine base, cocaine, and heroin in violation of 21 U.S.C. §§ 841, 846. On February 16, 1998, the jury found appellant guilty of both charges.

At the sentencing hearing, the judge found by a preponderance of the evidence that Collazo-Aponte was responsible for "more than 30 kilos of heroin, 150 kilos of cocaine, and/or 1.5 kilos of crack cocaine." After assessing appellant's criminal history and the extent of his participation in the offense, the district court sentenced appellant to 151 months' imprisonment for the drug conspiracy count.

During sentencing for the gun count, the government argued that appellant should not be sentenced under the base offense of § 924(c)(1)(A), but rather under the more severe punishment offered by § 924(c)(1)(B). Whereas § 924(c)(1)(A) offers a statutory minimum of

five years' imprisonment, § 924(c)(1)(B) mandates an enhanced sentence of no less than ten years' imprisonment for the use or carrying of a semiautomatic weapon during a crime of violence. To prove appellant's violation of § 924(c)(1)(B), the government cited two instances in which co-conspirators used semiautomatic weapons during the period of Collazo-Aponte's participation in the conspiracy - namely, a double murder in April 1994 and the shooting of a police officer in September 1994. The government argued that since the use of semiautomatic firearms by co-conspirators was foreseeable, Collazo-Aponte should be held accountable for it.

The district court agreed, finding by a preponderance of the evidence that appellant violated § 924(c)(1)(B). The court then imposed an enhanced sentence of ten years' imprisonment for the gun count.

## B. Procedural History

Collazo-Aponte appealed his conviction and sentence to this Court. United States v. Collazo-Aponte, 216 F.3d 163 (1st Cir. 2000). He claimed, inter alia, that he should have received a five-year, rather than the enhanced ten-year, sentence for the gun count. More specifically, appellant argued that (1) the use or carrying of the semiautomatic weapons occurred prior to his joining the conspiracy, and (2) he could not have foreseen the use of semiautomatic weapons. Id.

at 202. This Court rejected appellant's arguments, citing sufficient evidence in the record to refute both claims.

One day before we decided Collazo-Aponte's appeal, however, the Supreme Court rendered its opinion in Apprendi. Then, after this Court affirmed Collazo-Aponte's conviction and sentence, appellant sought a rehearing of his appeal raising new arguments in light of Apprendi. On September 18, 2000, this Court denied Collazo-Aponte's petition for rehearing.

Appellant then filed a petition for a writ of certiorari with the Supreme Court. On May 21, 2001, the Supreme Court granted appellant's petition, vacated this Court's judgment, and remanded the case to this Court for further consideration in light of Apprendi.

### DISCUSSION

On June 26, 2000, the Supreme Court decided Apprendi, which has been described as "a watershed change in constitutional law . . . ." 530 U.S. at 524 (O'Connor, J., dissenting). The Apprendi Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490 (internal quotations omitted). Because this holding was in contrast to then-existing practice, numerous appellants, including Collazo-Aponte, were given constitutionally-engineered ammunition to attack their convictions and sentences.

-6-

Relying on Apprendi, Collazo-Aponte argues (1) that his ten-year enhanced sentence for the gun count must be vacated since the jury never determined beyond a reasonable doubt that he carried a semiautomatic weapon; (2) that his drug sentence must be vacated because the drug quantity at issue was neither decided by the jury nor proven beyond a reasonable doubt; and (3) that his conviction should be vacated because § 841(b) is unconstitutional on its face. Since appellant's arguments are raised for the first time on appeal, we review them for plain error. See United States v. Eirby, 262 F.3d 31, 36 (1st Cir. 2001).

First, appellant argues that his ten-year enhanced sentence for the gun count must be vacated because, under Apprendi, the jury should have determined beyond reasonable doubt that he was accountable for the semiautomatic weapons used or carried by his co-conspirators. The government concedes that it was plain error for the district court to impose the enhanced sentence.[1] Given the government's concession, we vacate Collazo-Aponte's ten-year sentence.

The government proposes that we remand the case to substitute a five-year consecutive sentence for the ten-year enhanced sentence. The five-year sentence does not suffer from any of the constitutional

_____

[1] The government concedes this argument, in part, because the evidence used to establish appellant's guilt for the use of semiautomatic weapons pre-dates the amendment which authorizes an enhanced sentence for such conduct.

infirmities that plague the ten-year sentence because (1) the original indictment included a count charging appellant with violating § 924(c)(1)(A); and (2) the jury found appellant guilty of this charge beyond a reasonable doubt. Therefore, we remand the case to the district court to impose a sentence under § 924(c)(1)(A).

Second, Collazo-Aponte argues that his drug sentence must be vacated because the drug quantity at issue was not proven beyond a reasonable doubt at trial, as required by Apprendi. Appellant's argument, however, rests on an expansive reading of Apprendi that has been explicitly and repeatedly rejected by this Court. We have consistently held that the Apprendi doctrine does not apply to defendants who are sentenced to terms less than the otherwise applicable statutory maximum. See, e.g., Eirby, 262 F.3d at 37; United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); United States v. Baltas, 236 F.3d 27, 41 (1st Cir. 2001). Most succinctly, Apprendi does not require that all sentencing factors be submitted to a jury and proven beyond a reasonable doubt, rather only those that "increase[] the penalty for a crime beyond the prescribed statutory maximum . . . ." 530 U.S. at 490.

In the instant case, Collazo-Aponte's sentence for the drug conspiracy was at least seven years less than the applicable statutory maximum. See 21 U.S.C. § 841(b)(1)(C) (authorizing a term of imprisonment of not more than 20 years for a defendant who has been

found guilty of a drug offense involving any quantity of cocaine, crack cocaine, or heroin). Because Apprendi's constitutional requirements do not even apply to appellant's drug conspiracy sentence, we affirm the 151-month sentence. See Baltas, 236 F.3d at 41 (holding that "no constitutional error occurs when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt").

Lastly, Collazo-Aponte argues that his conviction should be vacated because, post-Apprendi, § 841(b) is unconstitutional on its face. Section 841(a)(1) makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 841(b), in turn, provides the penalties for violations of § 841(a)(1), which vary depending upon drug type and quantity. Before Apprendi was decided, only the elements specified in § 841(a)(1) needed to be proved to a jury beyond a reasonable doubt; the penalty provisions set forth in § 841(b) were administered by the sentencing judge under a preponderance of the evidence standard. After Apprendi, however, all facts (other than prior convictions) that set the maximum possible punishment under § 841(b) must be established beyond a reasonable doubt by the same body that determines culpability under § 841(a). See Eirby, 262 F.3d at 37 (finding that Apprendi applies to drug quantity determinations).

Because of this shift, appellant concludes that § 841(b) can no longer withstand constitutional scrutiny.

We find Collazo-Aponte's argument unpersuasive because none of the provisions of § 841(b) contradicts Apprendi's mandate. Section 841(b) does not require that sentencing judges determine the facts that increase the penalty for the crime beyond the prescribed statutory maximum. Nor does § 841(b) require that such facts be determined by a preponderance of the evidence. The statute is silent as to who makes these findings and under what burden of persuasion. Hence, there is nothing in the statutory language that explicitly defies Apprendi.

Moreover, the Constitution, as interpreted by Apprendi, simply makes the jury the decisionmaker and the reasonable-doubt standard the proper burden for facts that increase the penalty beyond the applicable statutory maximum. "How statutes are . . . implemented [] to fulfil that requirement is a subject to which the Constitution does not speak." United States v. Brough, 243 F.3d 1078, 1079 (7th Cir. 2001); see also United States v. Candelario, 240 F.3d 1300, 1311 n.16 (11th Cir. 2001) (characterizing as "without merit" a facial challenge to §§ 841 and 846 under Apprendi), cert. denied, --- U.S. ---, 121 S. Ct. 2535 (2001); United States v. Slaughter, 238 F.3d 580, 582 (5th Cir. 2000) (stating that "[w]e see nothing in the Supreme Court decision in Apprendi which would permit us to conclude that 21 U.S.C. §§ 841(a) and (b), 846, and 860(a) are unconstitutional on their

face"), cert. denied, 532 U.S. 1045, 121 S. Ct. 2015 (2001); United States v. Cernobyl, 255 F.3d 1215, 1218-19 (10th Cir. 2001) (rejecting an Apprendi-based facial challenge to § 841); United States v. McCallister, 272 F.3d 228 (4th Cir. 2001); United States v. Kelly, 272 F.3d 622 (3d Cir. 2001) (same); United States v. Martínez, 253 F.3d 251, 256 n.6 (6th Cir. 2001) (same); United States v. Woods, 270 F.3d 728, 729-30 (8th Cir. 2001) (same).

Thus, a shift in how judges implement § 841(b) simply does not raise the constitutional doubts of which Collazo-Aponte complains. Because there is no constitutional defect inherent in the language or design of § 841, we find no impediment to appellant's conviction under the statute.[2]

Collazo-Aponte's second challenge to § 841(b) argues that the statute is unconstitutional because it does not require proof beyond a reasonable doubt that the defendant knew of the specific quantity of cocaine involved in the offense. Since the plain language of § 841(a) requires that the proscribed acts be committed "knowingly and intentionally," appellant claims that this mens rea requirement should extend to all the elements of the offense. See United States v.

---

[2] Appellant also challenges the constitutionality of 21 U.S.C. § 846, which (among other things) makes the penalty provisions of § 841(b) applicable to anyone who conspires to violate § 841(a). Because § 846 is inextricably intertwined with § 841(b) and simply offers another occasion to apply the penalties set forth in § 841 (b), our ruling as to § 841(b) applies with equal force to § 846.

<u>Ahmad</u>, 101 F.3d 386, 390 (5th Cir. 1996) (applying mens rea requirement in statute to all elements of offense).  He concludes by noting that since, post-<u>Apprendi</u>, § 841 (b) must be determined by a jury beyond reasonable doubt, the  drug quantity at issue is now an element of the offense to which the mens rea requirement should apply.[3]

To determine whether Congress intended to impose the specific scienter requirement that appellant proposes, we must first examine the statutory language of § 841(b).  <u>See</u> <u>Staples</u> v. <u>United States</u>, 511 U.S. 600, 605 (1994) (noting that statutory language is the starting point in analyzing whether Congress intended to impose a mens rea requirement).  The plain language of § 841(b) requires the government to prove <u>only</u> that the offense "involved" a particular type and quantity of drug, not that the defendant knew that he was distributing that particular drug type and quantity.  <u>See</u> <u>United States</u> v. <u>Sheppard</u>, 219 F.3d 766, 768 n.2, 770 (8th Cir. 2000) (ruling that the statutory language of § 841(b) does not require the government to prove that defendant knew of the specific drug type and quantity at issue). Thus, nothing in the statutory language of § 841(b) supports a mens rea requirement.    Furthermore, a specific criminal intent requirement

---

[3] We disagree with appellant's characterization of the drug quantity as an element of the offense.  <u>Apprendi</u> did not convert all sentencing factors into elements of the offense, only those that "increase[] the penalty for a crime beyond the prescribed statutory maximum . . . ." 530 U.S. at 490.  Because the drug conspiracy sentence in this case was within the applicable statutory maximum, the drug quantity at issue never became an element of the offense.

"serves only to separate those who understand the wrongful nature of their act from those who do not." United States v. X-Citement Video, Inc., 513 U.S. 64, 72 n.3 (1994). Thus, the presumption in favor of a scienter requirement should only apply "to each of the statutory elements that criminalize otherwise innocent conduct." Id. at 72. In the instant case, the drug quantity involved in appellant's offense is not a factor that is necessary to the determination of whether his conduct is "criminal" or "innocent." Appellant is guilty whether he conspired to sell 30 kilos of heroin or 30,000. Because the amount of drugs at issue would not make appellant's behavior unpunishable, his argument necessarily fails.

## CONCLUSION

Given the government's concession, we **vacate** appellant's ten-year enhanced sentence imposed under § 924(c)(1)(B), and we **remand** the case to the district court to impose an Apprendi-compliant sentence under § 924(c)(1)(A). We uphold the constitutionality of § 841(b), and thereby **affirm** appellant's conviction under it. Lastly, we **affirm** appellant's sentence under the drug count, as it was within the applicable statutory maximum.

**Affirmed in part, vacated in part, and remanded for action consistent with this opinion.**