**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 19-1405

UNITED STATES OF AMERICA,

Appellee,

v.

ELIN ROBINSON MEJÍA ROMERO,
a/k/a SIXTO RIVERA, a/k/a MEMELO, a/k/a BENITO RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Torruella, Selya, and Kayatta,
Circuit Judges.

Zainabu Rumala, Assistant Federal Public Defender, on brief for appellant.
Andrew E. Lelling, United States Attorney, and Alexia R. De Vincentis, Assistant United States Attorney, on brief for appellee.

August 11, 2020

**SELYA**, **Circuit Judge**.  A jury convicted defendant-appellant Elin Robinson Mejía Romero on charges of conspiracy to possess with intent to distribute and to distribute heroin and fentanyl, see 21 U.S.C § 846; distribution of heroin and fentanyl, as well as possession with intent to distribute fentanyl, see id. § 841(a)(1); and unlawful reentry into the United States by a previously deported alien, see 8 U.S.C. § 1326.  The district court sentenced him to serve a 120-month term of immurement.  The defendant appeals, primarily challenging the district court's denial of his motion to suppress the fruits of a warrant-backed search of an apartment suspected to be a "stash house" for narcotics and at which drugs and other incriminating evidence were found.  After careful consideration, we conclude that the appeal is without merit.

We have written before, with a regularity bordering on the monotonous, words to the effect that when a trial court has "supportably found the facts, applied the appropriate legal standards, articulated [its] reasoning clearly, and reached a correct result, a reviewing court ought not to write at length merely to hear its own words resonate."  deBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 71 (1st Cir. 2014); see, e.g., United States v. Wetmore, 812 F.3d 245, 248 (1st Cir. 2016); Moses v. Mele, 711 F.3d 213, 215-16 (1st Cir. 2013); Eaton v. Penn-America Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010);

- 2 -

Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 2 (1st Cir. 2004); Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002); Ayala v. Union de Tronquistas de P.R., Local 901, 74 F.3d 344, 345 (1st Cir. 1996); Holders Cap. Corp. v. Cal. Union Ins. Co. (In re San Juan Dupont Plaza Hotel Fire Litig.), 989 F.2d 36, 38 (1st Cir. 1993). With respect to the suppression question, this is such a case. We therefore reject this claim of error for essentially the reasons spelled out in the district court's lucid rescript, see United States v. Romero, No. 17-CR-10199, 2018 WL 4119665 (D. Mass. Aug. 29, 2018), adding only a few brief comments relative to suppression and an additional comment relative to an unrelated claim of error advanced by the defendant.

**First:** Following the denial of a motion to suppress, we review the district court's ultimate determination of probable cause de novo. See United States v. Tanguay, 811 F.3d 78, 81 (1st Cir. 2016). Even so, we review its findings of fact for clear error and accept all reasonable inferences that it has drawn from the discerned facts. See United States v. Coombs, 857 F.3d 439, 445-46 (1st Cir. 2017). Here, the gist of the defendant's challenge to the district court's denial of his suppression motion is that the search warrant for the suspected stash house never should have issued because the warrant application failed to show a sufficient nexus between the defendant, the crimes, and the premises. The short answer is that the warrant application must

- 3 -

be read as a whole, see United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996), and reading it in that holistic manner dooms the defendant's challenge.  We explain briefly.

It is an uncontroversial proposition that a warrant for the search of premises may issue only upon a showing of probable cause to believe that a crime has been or is being committed and that evidence of the crime is likely to be found at the designated location.  See United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015); United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005).  Probable cause, though, does not mean absolute certainty, see United States v. Almonte-Báez, 857 F.3d 27, 32 (1st Cir. 2017), and a showing of probable cause may be based on reasonable inferences drawn from known facts, see United States v. Flores, 888 F.3d 537, 544-45 (1st Cir. 2018).  We — like the district court — must afford "great deference" to the judicial officer issuing the warrant.  United States v. Chiaradio, 684 F.3d 265, 279 (1st Cir. 2012) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

These principles guide our inquiry.  Taking the facts set out in the warrant application and drawing reasonable inferences therefrom to the affiant's behoof, the requisite nexus was sufficiently established.  So, too, the overall probable cause standard was plainly satisfied.  Although the defendant, ably represented, artfully attempts to deal with each of the facts in

isolation and attempts to explain them away, that piecemeal appraisal undervalues the force of the warrant application. See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (holding that "divide-and-conquer approach is improper" and explaining that facts must be viewed in their totality). After all, "[t]he sum of an evidentiary presentation may well be greater than its constituent parts." Bourjaily v. United States, 483 U.S. 171, 180 (1987). That truism applies here.

**Second:** Apart from the challenged suppression order, the defendant also contends that his convictions on three of the drug-trafficking counts must be reversed because evidence that a defendant has knowingly possessed some type and quantity of a controlled substance, instead of having knowingly possessed a particular type and quantity of a controlled substance, will not satisfy the government's burden of proof.[1] Although the district court did not address this contention in its rescript — the point was not before the court at that time — it may easily be dispatched.

The short of it is that we do not write on a pristine page. We already have addressed essentially the same argument in an earlier case and put it to rest. See United States v.

---

[1] The parties wrangle about the standard of review applicable to this claim of error: the defendant argues for de novo review, while the government asserts that the claim was not properly preserved and, therefore, review should be for plain error. Because we conclude that the claim fails under any standard of review, we assume for argument's sake that our review is de novo.

Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002) (holding that "nothing in the statutory language of § 841[] supports a mens rea requirement" and noting that any presumption in favor of a scienter requirement "should only apply 'to each of the statutory elements that criminalize otherwise innocent conduct'" (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994))). The law of the circuit doctrine, a "subset of stare decisis," is one of the "sturdiest 'building blocks on which the federal judicial system rests.'" United States v. Barbosa, 896 F.3d 60, 74 (1st Cir.) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)), cert. denied, 139 S. Ct. 579 (2018). Under this doctrine, which normally requires that we adhere to prior panel decisions closely on point, see, e.g., Arevalo v. Barr, 950 F.3d 15, 20-21 (1st Cir. 2020); United States v. Chin, 913 F.3d 251, 261-62 (1st Cir. 2019), Collazo-Aponte controls our decision here.

To be sure — as the defendant points out — the law of the circuit doctrine admits of certain exceptions. See Barbosa, 896 F.3d at 74 ("One such exception applies when the holding of a previous panel is contradicted by subsequent controlling authority, such as a decision by the Supreme Court, an en banc decision of the originating court, or a statutory overruling."). But these exceptions are few and far between: under the only exception arguably relevant here, the defendant would have to show

that subsequent authority, "although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Id. (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995)). The defendant strives to make such a showing, hand-picking statements from Supreme Court decisions postdating our Collazo-Aponte opinion, see, e.g., Rehaif v. United States, 139 S. Ct. 2191, 2195 (2019); Alleyne v. United States, 570 U.S. 99, 103 (2013); Flores-Figueroa v. United States, 556 U.S. 646, 650 (2009), and trying to cobble those hand-picked statements into a cogent argument. In the end, though, this argument depends heavily on speculation and surmise. Consequently, it falls well short of constituting "a sound reason for believing that the [Collazo-Aponte] panel . . . would change its collective mind." Barbosa, 896 F.3d at 74 (quoting Williams, 45 F.3d at 592).

To say more about this claim of error would be supererogatory. Following our holding in Collazo-Aponte, we hold — as did the district court — that the government had to prove only "that the offense 'involved' a particular type and quantity of [a proscribed] drug, not that the defendant knew that he was distributing that particular drug type and quantity." 281 F.3d at 326.

We need go no further.  The record reveals that the defendant was fairly tried; that based on sufficient proof, he was found guilty of the charged crimes beyond a reasonable doubt; and that no reversible error was committed.  For the reasons elucidated above, including those incorporated by reference from the district court's rescript, see Romero, 2018 WL 4119665 at *4, his convictions and sentence are summarily

**Affirmed.**  See 1st Cir. R. 27.0(c).